JPL/TJT:PJC
F. #2025R00122

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | **TO BE FILED UNDER SEAL** |
| - against - | COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION FOR |
| MINARA AKTAR, | AN ARREST WARRANT |
| Defendant. | No. 25-MJ-342 |
| | (42 U.S.C. § 1320a-7b(b)(2)(B); 18 U.S.C. § 2) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

SAMY HEGAZY, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG"), duly appointed according to law and acting as such.

On or about September 9, 2025, within the Eastern District of New York and elsewhere, the defendant MINARA AKTAR, together with others, did knowingly and willfully offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to Individual-1, a Medicaid recipient whose identity is known to me, to induce Individual-1 to purchase, lease, order and arrange for and recommend purchasing, leasing and ordering one or more goods, facilities, services and items for which payment may have been made in whole and in part under a Federal health care program, to wit: Medicaid.

(Title 42, United States Code, Section 1320a-7b(b)(2)(B); Title 18, United States Code, Section 2)

1

The source of your deponent's information and the grounds for his belief are as follows:

1. I have been a Special Agent with HHS-OIG for approximately three years. As a Special Agent, I investigate health care fraud, including schemes to defraud federal health care benefit programs and schemes involving illegal kickbacks and bribes. During my tenure with HHS-OIG, I have participated in a variety of criminal health care fraud investigations, during the course of which I have interviewed witnesses, conducted physical surveillance, arranged consensually monitored telephone calls and video recordings, executed search warrants, and reviewed health care claims data, bank records, telephone records, medical records, invoices, and other business records. I am familiar with the records and documents maintained by health care providers and the laws and regulations related to the administration of federal health care benefit programs.

2. I have personally participated in the investigation of the offense discussed below. I am familiar with the facts and circumstances of this investigation from, among other things: (a) my personal participation in this investigation, (b) reports made to me by other law enforcement authorities, and (c) information obtained from witnesses.

3. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a complaint and for the issuance of an arrest warrant, I have not set forth each and every fact learned during the course of this investigation. Instead, I have set forth only those facts, in sum and substance and in part, which I believe are necessary to establish probable cause in support of a complaint and for the issuance of the arrest warrant.

**PROBABLE CAUSE**

I.      The New York State Medicaid Program

4.      The New York State Medicaid program ("Medicaid") is a federal and state health care program providing benefits to individuals and families who meet specified financial and other eligibility requirements, and certain other individuals who lack adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services, is responsible for overseeing the Medicaid program in participating states, including New York. Individuals who receive benefits under Medicaid are referred to as "recipients."

5.      Medicaid is a "Federal health care program" as defined by Title 42, United States Code, Section 1320a-7b(f).

6.      Medicaid is a health and long-term care coverage program jointly financed by states and the federal government. Each state establishes and administers its own Medicaid program and determines the type, amount, duration, and scope of services covered within broad federal guidelines. In New York State, Medicaid is administered by the New York State Department of Health ("New York DOH").

7.      New York DOH approves certain Managed Long Term Care ("MLTC") plans to provide Medicaid managed long term care. MLTC plans provide services and support to people who have long-lasting health issues or disabilities. Each MLTC plan has its own network of health care providers, including home care agencies, health care professionals, and other providers. Managed care Medicaid providers who are within an MLTC network do not bill Medicaid directly, but instead bill the MLTC plan for services they provide to its plan members.

8. Medicaid MLTC services include social adult day care services. The term "social adult day care" ("SADC") describes a structured program that provides older adults with functional impairments socialization, supervision, personal care, and nutrition services in a protective setting. An SADC center would, for example, provide a space where its members can congregate and socialize by talking, playing card or board games, listen to music, sing karaoke, or participate in other activities under the supervision of SADC center staff who are trained to provide assistance to people with mobility and other health issues. Healthy meals, as well as transportation to and from the day care, might also be provided.

9. MLTCs require SADCs to document member attendance, which is often done through sign-in sheets.

10. Medicaid MLTC services also include home health services. MLTCs typically approve qualified Medicaid recipients for a combination of home health and SADC services.

II. The Defendant and Relevant Entities and Individuals

11. The defendant MINARA AKTAR is an employee of Ashiana Social Adult Daycare Inc. ("Ashiana").

12. Ashiana is an SADC located in Brooklyn, New York.

13. Apna Adult Day Care of Brighton, LLC ("APNA") is an SADC located in Brooklyn and affiliated with Ashiana.

14. Individual-1 is a New York Medicaid recipient whose identity is known to me.

15.     Individual-2 is a confidential source whose identity is known to me, and a relative of Individual-1.[1]

III.    The Health Care Fraud and Kickback Scheme

16.     The defendant MINARA AKTAR, together with others, offered and paid kickbacks and bribes to Medicaid recipients, including Individual-1, through Individual-2, to induce Medicaid recipients, including Individual-1, to arrange for services with AKTAR and for SADC services that were not provided and otherwise did not qualify for reimbursement.

17.     In or around July 2024, HHS-OIG began investigating a series of SADCs in Brooklyn for health care fraud, including the payment of illegal kickbacks and bribes and billing for services that were not provided.

A.      Recordings

18.     On approximately January 6, 2025, Individual-2 accompanied his/her parents to Ashiana and audio and video recorded the visit. Individual-2 asked a female staff member, "[Individual-1] will sign, we are getting paid today, right?" I am aware based on my training and experience that SADCs collect signatures from their members to substantiate their purported attendance in the case of an audit. Referring to AKTAR, the staff member told Individual-2, "Minara would know." Individual-2 then asked for payment for three months' worth of kickbacks for Individual-1's enrollment at Ashiana. Individual-2 could overhear someone telling a member, "you can go get [your money] from APNA today." Based on my training and experience investigating SADC schemes, I submit that that overheard conversation

---

[1]     Individual-2 is providing information to law enforcement in the hopes for a favorable outcome to any investigation into his/her conduct. Information Individual-2 has provided to the government has proven reliable and been corroborated by other evidence.

5

relates to a member requesting a kickback payment for purportedly receiving SADC services at APNA and/or Ashiana.

19. Individual-2 and the female staff member then had a discussion about how [Individual-1] had to sign the attendance sheets before s/he left. The staff member indicated that another relative of Individual-2 could not be paid a cash kickback for November because s/he never came during that month, but Individual-2 corrected the staff member that Individual-2's relative was actually on vacation in October and Ashiana had messed up the paperwork. The female staff member then instructed Individual-2 that if any member was approved for two days per week, they had to come one day, and if any members were approved for three days, they had to come two days.

20. I am aware, based on my training and experience, that SADCs engaged in fraud attempt to keep careful track of their members' vacations and hospitalizations because those are red flags for health insurers when claims are submitted. SADCs operating in the ordinary course would not need to track such information because they would simply submit claims for services as they are provided and therefore would not submit claims for individuals who are on vacation or in the hospital.

21. On approximately June 17, 2025, Individual-2 again went to Ashiana with his/her parents and audio and video recorded. They were met by a female staff member who called for AKTAR by name. AKTAR paid Individual-2 cash in an envelope for members Individual-2 referred to Ashiana, who included Individual-1. Individual-2 and AKTAR argued because AKTAR only paid Individual-2 for two months. AKTAR told Individual-2, "I was only told for two months so I calculated for two months." Individual-2 replied, "It's three months because you guys give me every three months."

6

22. Individual-2 has reported to law enforcement that his/her parents have been enrolled with Ashiana since approximately July 2024 when their prior SADC was searched by law enforcement. Individual-2 further reported that his/her relatives have been receiving cash kickbacks from Ashiana since approximately that same time and that he/she pays the kickbacks he/she receives to her relatives, including Individual-1.

23. On approximately September 9, 2025, Individual-2 again audio and video recorded a visit to Ashiana. Individual-2 told AKTAR, "I have three members and all are active." AKTAR replied, "Okay, give her nine hundred," which equates to a $300 kickback per member per month. Individual-2 provided law enforcement with a copy of a check from Ashiana to an entity affiliated with Individual-2 for approximately $900.

24. On approximately November 26, 2025, Individual-2 visited Ashiana and did not record. Individual-2 reported to law enforcement that he/she inquired with staff about receiving payment for his/her parents and was instructed to come back in the next few days.

B. The Medicaid Claims Data

25. Medicaid MLTC claims data shows that, between approximately April 2023 and March 2025, Ashiana billed Medicaid and/or MLTCs approximately $2,316,960 and was paid approximately $2,317,300 for SADC and related services it purported to provide.

C. The Search of Ashiana

26. On approximately December 2, 2025, law enforcement executed a premises search at Ashiana. During that search, law enforcement recovered cash consistent with the paying of kickbacks.

27. Law enforcement also interviewed AKTAR. In AKTAR's possession at the time of the interview were ledgers listing what appeared to be names of Ashiana's members

7

with dollar figures. Based on my training and experience, this evidence is consistent with a ledger reflecting payment of kickbacks to those members.

D.     Apparent Flight

28.    Sometime overnight on approximately December 3, 2025, or in the early morning of December 4, 2025, AKTAR booked an airline flight to Dubai, United Arab Emirates that is scheduled to depart today, December 4, 2025, at approximately 10:30 a.m. Based on the sequence of events and the timing of the flight, AKTAR appears to be preparing to flee from prosecution.

\* \* \*

29.    Based on the foregoing, there is probable cause to that the defendant MINARA AKTAR has committed the offense of offering and paying illegal health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B), based on, among other things, her payment of illegal kickbacks and bribes in the form of cash to Individual-2 in exchange for submitting and causing the submission of claims to a federal health care program for Individual-1's purported SADC services.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant MINARA AKTAR so that she may be dealt with according to law.

IT IS FURTHER REQUESTED that, because public filing of this document at this time could result in a risk of flight by the defendant, as well as jeopardize the government's

8

investigation, all papers submitted in support of this application, including the complaint and arrest warrant, be sealed until further order of the Court.

*Samy Hegazy*
SAMY HEGAZY
Special Agent, HHS-OIG

Sworn to telephonically this
__4th__ day of December, 2025

*Vera M. Scanlon*
THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK